## TERRITORY *v.* LESLIE FORREST.

## No. 1454.

EXCEPTIONS FROM CIRCUIT COURT FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

SUBMITTED MARCH 6, 1923.                    DECIDED MAY 29, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

FORGERY—*elements of—improper exercise of authority.*

> Where a purchasing agent is empowered by his principal to draw on his principal's bank account by checks signed in the principal's name as maker to pay for purchases made for and on account of his principal, and the agent by means of such a check draws on his principal's bank account not for the purpose authorized, but for the purpose and with the false and fraudulent intent of converting the money to be derived thereby to his own use and benefit, such agent is guilty of forgery.

OPINION OF THE COURT BY PETERS, C. J.

The defendant was convicted by a jury of the circuit court of the fourth circuit of the crime of forgery and prosecuted exceptions to this court. The writing alleged to have been forged was a check or withdrawal slip on The People's Bank, Limited, of Hilo, dated September 30, 1920, and purporting to be signed by D. Ballie, directing the bank to pay to "cash" the sum of $1350 and charge the same to the account of the maker, to wit, account No. 2888 in the savings department of the bank.

The defendant's exceptions will be treated in the order of their importance. First, the exception to the denial by the trial court of defendant's motion for a directed verdict upon the grounds (1) "* * * no proof of venue;" (2) "* * * the facts introduced on behalf of the prosecution * * * does not constitute forgery and is not a violation of section 3953 of the Revised

Laws of Hawaii, 1915, or Chapter 231 of the Revised Laws," and (3) "that there is no proof of the allegations."

The first ground of the motion was not presented in defendant's brief. The cause was submitted without argument, hence this ground of the motion is considered abandoned.

The second and third grounds of the motion may be treated as one, both having been submitted by the defendant together upon the broad claim that the evidence showed that the defendant had authority to sign the check or withdrawal slip in question, or if not at least he had reasonable cause to believe that such authority had been conferred upon him and hence was entitled to his discharge.

The evidence is undisputed that on September 30, 1920, one D. Ballie had an account in the savings department of The People's Bank, Limited, of Hilo, identified as account No. 2888; that on that day the defendant made and signed a check or withdrawal slip in the name of "D. Ballie" as maker, and that such check was honored by the bank, paid to the holder and the amount thereof charged to Ballie's account with the bank. It is also undisputed that Ballie had theretofore directed the defendant to buy him some Waialua or San Carlos stock, or failing such stock "anything good" which he (the defendant) might select and to pay therefor with funds to be drawn from Ballie's savings account with the bank. Ballie testified on re-redirect examination that he told the defendant, "You can sign a check for me," but when asked, "Is it not a matter of fact all that you told him was that if there was sugar stock selling reasonable or low to buy it for you," to which the witness answered, "Yes, sir."

In addition to this bit of contradictory evidence upon which the claim of express authority to sign checks to

purchase stock for Ballie's account might be predicated there is further evidence from which it might seem that the signing of checks or withdrawal slips by the defendant for the purpose of purchasing stock for Ballie was necessarily contemplated by the parties when Ballie gave the defendant the instructions to buy the stock and to pay therefor with funds to be withdrawn from Ballie's savings account with the bank. Ballie knew that in order to withdraw funds from his savings account in the bank it was necessary that he as a depositor sign a check or withdrawal slip for the amount of such withdrawal, accompanied by his pass-book. The defendant, who was the cashier of the bank, unquestionably must have known of the system then in vogue. The defendant was Ballie's business agent in Hilo and a man in whom Ballie had every confidence. Ballie had left his pass-book in the defendant's custody; he himself lived some distance from the bank and may have figured that it would be more convenient to have the defendant, who by reason of his employment at the bank was constantly available, attend to any necessary withdrawal than for him to go personally to Hilo and attend to it himself; moreover the occasion for the use of the money by the defendant depended entirely upon the defendant's purchasing Waialua or San Carlos stock or something else that was "good." In view of all these circumstances and the inference that may be legitimately drawn therefrom it might be said that the power to sign all necessary papers required by the bank for such withdrawals, including a check or withdrawal slip, was necessarily implied by the express authority to draw Ballie's funds from the bank. Be that as it may. Where it appears that the power to make and sign checks in the name of another as maker is limited by the use to which the proceeds to be derived therefrom may be devoted, and it further appears that the power

was not exercised for the purpose to which it was limited, it is not a defense to a charge of forgery merely to show that the power existed or the one exercising the power had reasonable cause to believe that it existed. To constitute a defense to the charge of forgery it must also appear that the power was exercised for the specific purpose to which it was limited. Hence, even if the defendant had express authority to sign checks in Ballie's name as maker in order to withdraw funds from Ballie's savings deposit at the bank and to purchase stock for Ballie's account; or in the absence of such express authority, assuming, though not deciding, that he had implied authority so to do, the evidence was nevertheless sufficient to make out a prima facie case of forgery.

Both the express authority and the assumed implied authority to sign checks or withdrawal slips in the name of the depositor were limited to a specific purpose—to buy stock for and on the latter's account. It was not a general authority to sign checks. If this power to sign checks was not exercised for the specific purpose to which the donor of the power had specifically limited it but exercised for another and a false and fraudulent purpose then such exercise of the power for the false and fraudulent purpose constitutes forgery.

The evidence tended to show that the defendant never bought any Waialua or San Carlos stock or any other stock for Ballie's account. The defendant never notified Ballie that he had bought any stock for this account. No claim was made that he had bought any stock for Ballie's account. Ballie never received any stock from the defendant as a result of the withdrawal secured by means of the check of September 30, 1920, or at all. On December 3, 1921, the directors of The People's Bank demanded of the defendant that he forthwith tender his resignation as cashier of the bank, the same to take effect

immediately, and at the same time demanded of him "a full, detailed and itemized accounting as to all moneys withdrawn, taken or otherwise appropriated by" him "from the savings department of the said bank charged against accounts of depositors in the savings department of said bank without the authorization of said depositors to so take or withdraw said moneys and for the immediate return and repayment to said bank of all such moneys so withdrawn or taken," to which he admitted that he was in default and personally prepared and handed to an officer of the bank a list including the item "Ballie $2520.92," which was the amount of the credit to which Ballie was then entitled at the bank, according to Ballie's ledger card, were the amount of $1350, represented by the withdrawal of September 30, 1920, and corresponding interest thereon from date of withdrawal, excluded as a debit or charge against Ballie. This evidence was directed to the question of the intent with which the defendant signed the check or withdrawal slip of September 30, 1920. It was sufficient to give rise to the inference and justify the jury in finding that the defendant at the time he drew the check or withdrawal slip in question did not do so with the intention of securing funds wherewith to purchase stock for Ballie's account but with the false and fraudulent intention of converting the proceeds of said check or withdrawal slip to his own use and benefit. Where a purchasing agent is empowered by his principal to draw on his principal's bank account by checks signed in the principal's name as maker to pay for purchases made for and on account of his principal, and the agent by means of such a check draws on his principal's bank account not for the purpose authorized, but for the purpose and with the false and fraudulent intent of converting the money to his own use and benefit, such agent is guilty of forgery. 26 C. J., title "Forgery," Sec. 7, p. 898;

*People* v. *Dickie,* 17 N. Y. S. 51, 52; *Hooper* v. *State,* 30 Tex. App. 412.

Defendant's exception to the verdict and his exception to the court's overruling his motion for a new trial involve the same issues of law as presented upon the exception to the denial of defendant's motion for a directed verdict, and hence are overruled without further comment.

Defendant also complains of the refusal of the trial court to give the following instruction requested by him: "I instruct you that if you find from the evidence that the defendant did not have authority to sign the name of D. Ballie to the particular check in evidence in this case, but that it appears further from the evidence that he had fair grounds for believing that he had such authority, even though in fact he had not, then your verdict must be for the defendant." In the abstract the instruction was correct. It had no concrete application, however, to the facts. It failed to take into consideration the limitation placed by Ballie upon the purpose to which any withdrawal from his savings account with the bank should be devoted. As heretofore explained, even though the defendant may have had fair grounds for believing that he had authority to sign checks or withdrawal slips to withdraw Ballie's moneys from the bank, if he did so with the false and fraudulent purpose of securing the funds for himself and converting the same to his own use he would be guilty of forgery. The instruction was properly refused.

During the course of Ballie's examination on direct the witness was permitted to testify over the objection of the defendant that he had not received sugar stocks from the defendant and that the defendant had not told him that he had bought sugar stocks. This the defendant assigns as error. This evidence was material and relevant to the question of intent with which the defendant made

and signed Ballie's name to the check or withdrawal slip of September 30, 1920. Had the defendant signed the check with the lawful intention of securing money to purchase stock for Ballie's account, pursuant either to express authority or to the authority with which we have assumed that he was clothed, it is obvious that a different situation might be involved. It was incumbent upon the prosecution to prove, and its evidence tended to prove, that the check was made and signed with a false and fraudulent intent. That the defendant never claimed to have purchased any stock for Ballie's account and that Ballie never received any stock from the defendant after he had withdrawn Ballie's money· from the bank were circumstances tending to show that the check was drawn with such intent. The evidence was properly admitted.

Finally the defendant complains of the comment of the trial judge, made in the presence of the jury, that the witness was "adverse." The occasion of this remark was the ruling by the court on defendant's objection to the further examination of the witness by the county attorney on the ground that it was not proper "redirect." The witness was upon re-redirect. On direct examination the witness had testified that the matter of the defendant's signing checks in the name of the witness or otherwise had never been a subject of discussion between them, but on cross-examination, when asked whether or not he had authorized the defendant to sign the witness' name to the check or withdrawal slip of September 30, 1920, he answered in the affirmative. On redirect the witness testified that he had not authorized the defendant to sign the check in question with the same directness and certainty that he had testified to the contrary on cross. On recross the witness switched back to ˙the same evidence he had given on cross. Then the court took a hand and upon questioning the witness as to whether the defendant

had authority to sign Ballie's name to the check of September 30, 1920, the witness answered in the affirmative. Then it was that the county attorney took the witness again on re-redirect and the following proceedings took place: "Mr. Beers. Q Now let me see: Did you at any time prior to September 30th tell Mr. Forrest, 'whenever you buy sugar stock draw out a check and sign my name to it.' Did you tell him anything like that? A I gave him authority to use my money. Q Did you tell him to sign checks for you? A No sir. Q You knew you had money there? A Yes sir. Q And you had in mind when you told him to buy stock to charge up your account; is that it? A Yes sir. Q And you had no idea that he was going to sign your name to any check, had you? Mr. Rawlins: If the court please, I submit it is improper redirect. The court. I am going to overrule your objection. This witness is quite adverse, and I will overrule your objection."

It may be that in the use of the words "authority" and "authorize" in leading questions directed to the witness concerning the power which he had delegated to the defendant the witness became confused. Whether an agent is authorized to sign the name of his principal is a mixed question of law and fact. It is only after the facts are disclosed that one can say as a matter of law whether the agent was authorized to perform the act in question. It appears, however, from the evidence that Ballie prior to the trial had been reimbursed by The People's Bank, Limited, in the amount of the loss occasioned him by the acts of the defendant and it is apparent from his evidence that he was reluctant to testify against the defendant. His manner and demeanor while a witness on the stand is of course a matter which the record cannot preserve. It was, however, a matter of observation by the trial judge and may have influenced the comment.

Whether by reason of failure to recollect or otherwise (it is immaterial which) Ballie's evidence contains discrepancies which might incline a jury to doubt his credibility. He was subsequently successfully impeached by the prosecution.

We are inclined to feel that the comment complained of was brought about by defendant's objection and was but the expression by the trial judge of his reason for permitting the county attorney to further pursue a subject-matter upon which the witness had been so contradictory as to lead the court to believe the witness was adverse. Under the circumstances the remark was justified and proper and does not constitute error.

The exceptions of the defendant are overruled.

*W. H. Beers,* County Attorney of Hawaii and Deputy Attorney General, and *A. G. Correa,* Deputy County Attorney of Hawaii, for the Territory.

*W. T. Rawlins* for defendant.